Good morning, and may it please the Court. My name is Stephen Koeninger. From the Office of the Federal Public Defender, I represent the appellant, Filiberto Zavala, who asked this Court to reverse the District Court's order denying his motion to dismiss the indictment. I'd like to reserve two minutes of time for rebuttal, and will endeavor to watch the clock. While Mr. Zavala's briefing sets forth multiple due process violations that took place at his underlying removal proceedings, this morning I plan to focus briefly on immigration judge errors, especially at the January 13th hearing, which is the final hearing in this case. And then I will address how Mr. Zavala was prejudiced by the various due process violations that marred his removal proceedings. Your Honors, this Court has long held that where eligibility for relief from removal is apparent, an immigration judge has a mandatory duty to meaningfully advise a noncitizen about relief, and give them the opportunity to develop the issue, and importantly, the concern that animates the meaningful advisement requirement is that a noncitizen have a genuine opportunity to apply for relief, a genuine opportunity to present evidence. And consistent with ensuring a genuine opportunity, this Court has held that due process requires an immigration judge to adequately explain the hearing procedures to an alien with respect to relief, including what he must prove to establish his basis for relief. In the context of voluntary departure, Your Honors, this would be explaining the positive and negative equities that would be weighed by the immigration judge during the voluntary departure decision. Those factors are repeated frequently in the case law, they're discussed in this Court's opinion in Compost-Granillo, and it would include on the favorable side, family ties to the United States, a long duration of residence, a history of employment, and on the unfavorable side, an advisal about immigration history, and criminal... Counsel, I want to let you know what my concern is with your argument. I understand first that our standard of review is de novo. Correct. But, quoting from what Judge Orrick said, he said, while your client has a number of positive equities, he has failed to make a convincing argument that his immigration record, i.e. seven border turnarounds, voluntary return, when coupled with his criminal record, would not have outweighed it, making the IJ's exercise of discretion in his favor implausible. So, for me, I would like you to focus, and again, I understand why, I understand that our standard of review is de novo, but I would like you to focus on why relief here, in your view, is plausible, because it strikes me that the To begin, to be clear, Mr. Zavala has outstanding positive equities in this case, and I think it's important to frame the inquiry in this regard, and that the immigration judge was unaware, because of the due process violations, that he was engaged to a legal permanent resident who was in the process of applying for U.S. citizenship, and sought to, would seek to sponsor him at a later date. And this is significant, Judge Bennett, because of the nature of the relief, that voluntary departure is, the purpose is to preserve the possibility that at some future point in time, the non-citizen could enter, re-enter lawfully. But getting to the equities, Your Honor, I think the combination of Mr. Zavala's positive equities, along with the cases cited in my briefing, get us there. And I'd like to draw the Court's attention in particular, to the Perez-Valle opinion, from the BIA. In that opinion, there is a non-citizen, who was granted voluntary departure, who has a more aggravated criminal history than Mr. Zavala, as well as an immigration history that is at least on par. And the Court will remember, in Perez-Valle, the non-citizen was granted voluntary departure, notwithstanding six felony convictions, two of which were for false claims to United States citizenship, after which he was necessarily removed, came back, sustained four convictions for alien smuggling, conspiracy and transportation of aliens. And so, these are very serious criminal convictions that I submit are even more aggravated than the criminal history for Mr. Zavala. On the immigration history side, the non-citizen in Perez-Valle had at least four unlawful entries, after which he received one voluntary return, he served a sentence, was necessarily returned, came back, and was deported, before he came back again, claiming again, falsely to be a citizen, and at that point, he was still granted voluntary departure. And I understand the government's argument, government wants this Court to evaluate this merely as a number of entries, not as the, without looking at the degree of the immigration history, the seriousness of the immigration history. In Perez-Valle, the non-citizen had been deported. That's significant, because that represents a far more serious immigration history than Mr. Zavala's, because deportation comes with it, a statutory bar, for a set period of time, it comes after a hearing with an immigration judge, therefore representing a much more serious immigration history, and it also subjects that individual to prosecution for a felony offense. And in that case, what specifically was the I.J. unaware of? In Perez-Valle, the I.J., there wasn't a case in which there was a claim of error, it's a case that illustrates a circumstance, Your Honor, in which a non-citizen was granted voluntary departure, notwithstanding six felony convictions. But here, we're dealing with a situation where we have to look at what the I.J. was and wasn't aware of, right? We have to look at the record as a whole, yes. And including the bond hearing questions and answers, right? No, we do not, Your Honor. Why not? Because the bond hearing record is separate, well, let me rephrase that. As far, I should step back, for purposes of due process violations, the bond hearing is separate, but for purposes of establishing plausibility of relief, that is the type of evidence that demonstrates that Mr. Zavala did have a plausible claim to voluntary departure. So you're saying we don't even get, in determining plausibility, we don't even get to look at what the I.J. was told about the factors you emphasized earlier at the bond hearing? We look at, the I.J. would grant voluntary departure. No, I understand that, but in looking just generally, we get to take into account the factors that this immigration judge was told, because that's in the record. Sure, for purposes of plausibility, we can look to, and there are significant positive equities in that bond proceeding. That is the declaration from his... May I ask you this, what facts was the I.J. not aware of, that would have been made aware of had he not committed the errors you claim? In the record for voluntary departure, and this may go to your question as well, Judge Bennett, he was not aware of the information that was in the bond proceeding, because the regulations precluded... What was that information? That information was a declaration from my client's fiance, who was a lawful permanent resident of 22 years. They planned to marry. She was in the process of applying for her United States citizenship, and would sponsor... She was applying, or he was applying? It says she was in the process of applying. She had three United States children, with whom Mr. Zavala lived. He lived in this household. He lived with these children, his future step-sons, and he assisted with the financial support of the household. These are significant positive equities. They cannot be... They're not available to the judge at the hearing. We can consider them certainly in the plausibility analysis later, because it's a retrospective analysis based on the evidence that is submitted. The I.J. did know that Zavala had sole custody of his two children, and had been employed in a lumber yard for the prior six years, so he knew about custody of children and employment and long-term residency, correct? No, not entirely, Judge Baya. He was not aware of the full scope of his employment history, which was 12 years. And significantly, this refers to arguments made by Mr. Zavala's ineffective counsel during a removal proceeding, and it's significant because he's arguing for bond. And so, he's making these assertions in the context of bond, which is not only not proper, but by immigration regulation and the practice manual, those are separate records. But we also know that the immigration judge didn't actually remember that information, because during that proceeding, he told the immigration judge significantly that the charges, the weapons charge that Mr. Zavala had been charged with was dismissed. He had pleaded to fish and game violations, and yet at the January... And in response to that, the I.J. said, well, I'm really going on the domestic violence, right? Right, but this goes to... He said that after a brief pause of two seconds, and this goes to my due process violation claim with respect to the adequacy of his explanation, because I'm not convinced, and I don't think that the record reveals that the judge really put that out of his mind. But we know, to go back to your question, Judge Bay, if I may, we know that the statements that were made by counsel at the initial hearing included that this was not a weapons offense, and yet the immigration judge, when ruling, stated that he had a weapons offense. So, it didn't resonate a month later what was stated at the initial hearing. And instead, the judge was relying on the I-213 form, which was one of the exhibits that was submitted. Your Honor, I see that I'm... We'll give you a little bit of time for rebuttal. Thank you, Your Honor. I appreciate that. Good morning, and may it please the Court, my name is Evan Metier, and today I'm here on behalf of the United States. The United States asks that this Court affirm Mr. Zavala's conviction for three reasons. First, Mr. Zavala was not denied due process. He requested voluntary departure, he received a merits hearing at which his positive equities were developed, and the IJ made a decision on the merits after weighing those equities. Second, Mr. Zavala cannot show that he was prejudiced. He has not identified a single non-citizen who received relief with anything like his criminal record and his immigration record that included at least eight illegal entries and prior relief from removal. You called him a non-citizen? He's not a citizen of Mexico? A non-citizen of the United States, Your Honor. All right. I call him an alien. Understood, Your Honor. The third reason, independent from the first two, Mr. Zavala cannot meet the requirements of 1326 D-1 and D-2. The IJ informed Mr. Zavala of his right to appeal multiple times. He confirmed that he understood his right to appeal multiple times, yet at the end of proceedings, he decided not to seek administrative review or petition this Court for review, stating instead that he... These are issues Judge Oreck didn't feel the need to reach. I'm sorry, Your Honor, I didn't hear you. These are issues Judge Oreck did not feel the need to reach. That's right, Your Honor. So the District Court began in its inquiry with prejudice, and as the Court focused on that in arguments, I'll turn to prejudice now, because I do believe that this Court can also affirm the District Court just on the prejudice question. As I noted, it's Mr. Zavala's burden to show that a similarly situated non-citizen received relief with a similar record. And as Judge Oreck emphasized, it's the criminal record that includes felony witness intimidation, domestic violence, and a recent arrest for a firearms offense, combined with an immigration record that's very aggravated, eight illegal entries, prior relief from removal in the form of voluntary return, and a misrepresentation of that record to the immigration judge at the hearing. Those are all serious negative equities. But Zavala's counsel focused on the Perez-Valle case. Tell me why Zavala's case is not like that case. It's not comparable. I think there were six felony convictions in that case. Yes, Your Honor. So there are six felony convictions, so there are more felony convictions. But Mr. Zavala's criminal history is more aggravated because his felonies involve violence. They involve force or the threat of force against his partner and against a witness. And that sort of serious criminal history weighs more heavily. But even if — It was a misdemeanor, domestic violence, though? Yes, Your Honor. But even if we take the criminal records as comparable, the immigration history for Mr. Zavala is still more aggravated. He has double the number of known illegal reentries as compared to the alien in Perez-Valle's. So it's a more aggravated immigration history. I'd also emphasize, even if the court believes that Perez-Valle is a comparable case, this court has emphasized that finding just one case that's arguably on point does not satisfy the burden of showing plausibility. It only shows that it's possible or conceivable that relief will be granted. In the government's view, are we allowed or not allowed to take into account things like his multiple aliases, his multiple alias DOBs, the fact that he gave an alias when he was arrested on the fish and game violation? Are those sorts of things relevant or, in the government's view, not relevant? I do think they're relevant, Your Honor. I think that they show the totality of Mr. Zavala's criminal history, especially because these aliases were given in the context of his criminal encounters. Well, from what I could tell from the record, the only thing that we know for sure, at least if we credit the reports, is that one of the aliases was given when he was arrested for the pig case. Yes, Your Honor. I don't remember in the record where the rest of the aliases came from. I'm not sure. But it's not that important. Yes, Your Honor. So just to reiterate, even if we take that one case as on point, that's not enough to show plausibility. And Mr. Zavala can't show any other noncitizen that received relief with this sort of record. And so it just wasn't plausible for him to get relief. And I think that this case is also different from the normal kind of run-of-the-mill case where plausibility is assessed because Mr. Zavala's equities were put in front of an immigration judge. In most of these cases, relief is not requested. There's no merits hearing. There's no decision on the record. But Mr. Zavala did request relief. And his strongest positive equities, his long residence in the United States, his two U.S. citizen children, these positive equities were in front of the immigration judge. And he simply disagreed that they outweighed the negative equities. And I don't think that Mr. Zavala has pointed to any positive equities in the record that would change that determination by the immigration judge. Well, I think he did point out, and correct me if I'm wrong, that it wasn't in the record the relationship with the then-current fiancee. Am I right on that? He noted that he was asked the question, are you married or are you single? He responded, married, and then corrected himself and said, well, I'm together. And so that is what was in front of the immigration judge. He didn't just... Married, well, just together? That's right. He didn't use the word fiancee, but the fact of that relationship was on the record. And I also think it's notable that what Mr. Zavala has to show to establish a due process violation is that he was prevented the opportunity to reasonably present his case to the immigration judge. But he can't show that on this record. He could have used the word fiancee when he answered that question. He didn't. He still got across, I think, the essential piece of information, but now he's complaining that he didn't have the opportunity to use the specific word that he could have used answering the question. Similarly, he told the immigration judge that he had two daughters who were U.S. citizens. He could have, in that moment, also noted that he had... That his partner had three children that he was assisting in support. He chose not to make that record, but he was not denied an opportunity to make that record because he had a merits hearing where he was providing information to the immigration judge. And the immigration judge's questions were directly linked to the positive equities that weighed on whether to grant voluntary departure or not. He asked about his family ties. He asked about any humanitarian involvements, and he asked about his history in the United States. This developed a full record on which the immigration judge decided to deny relief. That's not a due process violation. I do want to also note that Mr. Zavala is required under 1326 D1 and D2 to exhaust his administrative remedies or show he exhausted administrative remedies and show that he was deprived of judicial review. Again, he can't do so on this record. These are, under Palomar-Santiago, mandatory conditions. They can't be excused. And that's essentially what Mr. Zavala argues in his briefing, that because relief was not because the immigration judge did not adequately raise the possibility of relief, that he's excused from satisfying D1 and D2. What's the current state of the Ninth Circuit law on your argument there? I believe that the Ninth Circuit's previous excusal doctrine is irreconcilable with Palomar-Santiago. Have we ever said that? No, Your Honor. And is it the United States' position that if we were to get to that issue, that we as a three-judge panel would have the ability to say that our prior jurisprudence is irreconcilable with Palomar-Santiago? I believe that because it's clearly irreconcilable with Palomar-Santiago, I believe that this court could write on that. I don't believe it's necessary for the court to re-judge. I understand that. But is it the United States' position that our three-judge panel could do that, vice an in-bank panel? Your Honor, I don't have a clear answer for you on that right now. If you'd prefer, I could write a letter afterwards. No, I just wanted to know if the United States had a position on that because you were arguing Palomar-Santiago. Yes, Your Honor. All right. Go ahead. But I do believe on this record, Mr. Zavala cannot show exhaustion because he had an available remedy, as the non-citizen in Palomar-Santiago had an available appeal with the BIA, and he failed to exercise that remedy. That's a failure to exhaust, and that also is an independent reason that Mr. Zavala's appeal should be rejected. Your Honors, if there are no further questions, then the United States would ask that this Court affirm Mr. Zavala's convictions. Thank you. Counsel will give you two minutes for rebuttal. Thank you, Judge Bennett. I appreciate it. I'll be brief. First, plausibility does not require an identically situated non-citizen. It's a similarly situated non-citizen. Perez-Valle involved a more serious criminal history. Violence is not the only manner in which to demonstrate that there is a serious criminal history. Of course, we know very little about what actually took place with respect to the underlying convictions in Mr. Zavala's case, but we do know important information as well, which was that it was five years ago, five years prior to the hearing, it was not part of an increasing pattern of conduct, and it all arose from a single incident. These are important facts that this Court noted in Valdez-Novoa. And he got the kids. He got the kids. There's no probation violations. There's no protective order violations. And so it's actually a demonstration of rehabilitation, which supports Mr. Zavala's plausible claim for relief. This is not just one case. I discussed Perez-Valle here. My briefing discusses other cases that point the Court in particular to the Juarez-Franco case from the Southern District of California, in which the Court there found plausibility, as well as the de la Torre-Hernandez case. Those involved multiple felony convictions in Torre-Hernandez, in Juarez-Franco, but the judge held that it was plausible notwithstanding nine total convictions, including four DUIs, DUIs being a particular serious prior in the context of voluntary departure. And lastly, I'd like to comment on the Palomar—well, actually, with respect to Mr. Zavala's border turnarounds, I want to make sure this isn't lost on the Court, which is that there are significant mitigating circumstances there. If the Court looks at the record, you'll see that six of the seven border turnarounds happened in a one-month period of time when Mr. Zavala's partner was pregnant with their first child. That's a significant mitigating circumstance in the matter of GOMBOA, discusses the humanitarian component of partners with one—where one of the partners is pregnant. You have a final point you'd like to make, Counsel. Palomar did not disturb Mendoza-Lopez. My briefing sets forth my argument regarding the Supreme Court's opinion in Mendoza-Lopez, which held relief was not available—administrative relief was not available when there was an is here. Thank you, Your Honor. We thank Counsel for their arguments, and the case just argued will be submitted.
judges: BEA, BENNETT, THOMAS